# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANNETTE GANTNER, ex. rel. J.J., a minor,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | No. 17 C 00066<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Annette Gantner filed this action on behalf of minor, J.J., seeking reversal of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 1381 et. seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. PROCEDURAL HISTORY

On June 26, 2013, an application for SSI was filed on behalf of a minor child, J.J., by his legal guardian, Annette Gantner. (R. at 153–58).[2] J.J. was born on

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security and is substituted for her predecessor as the proper defendant in this action. Fed. R. Civ. P. 25(d).

1

November 13, 2003 and his application alleged that he became disabled on November 13, 2003. (*Id.* at 153). The application was denied initially and upon reconsideration, after which Ms. Gantner filed a timely request for a hearing. (*Id.* at 20). On May 13, 2015, J.J. and Ms. Gantner testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 38–63).

On June 5, 2015, the ALJ denied J.H.'s request for benefits. (R. at 20–33). Applying the three-step sequential evaluation process, the ALJ found at step one that J.J. has not engaged in substantial gainful activity since his application date. At step two, the ALJ found that J.J.'s speech and language delay is a severe impairment. At step three, the ALJ determined that J.J. does not have an impairment or combination of impairments that meet or medically equal the severity of any of the Listings of Impairments (Listings). The ALJ then determined that J.J. does not have an impairment or combination of impairments that functionally equal the severity of any of the Listings.

On November 16, 2016, the Appeals Council denied J.J.'s request for review. (R. at 1–4). J.J. now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

---

[2] The ALJ decision states that the application date was June 6, 2013 (R. at 20), but the correct date is June 26, 2013 (*id.* at 153).

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized under 42 U.S.C. 405(g). On review, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). The ALJ must "explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "[T]he ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to

prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

"A child qualifies as disabled and therefore may be eligible for SSI if he has a 'medically determinable physical or mental impairment, which results in marked and severe functional limitations' and the impairment 'has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 699 (7th Cir. 2009) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)). To decide whether a child meets this definition, the Social Security Administration (SSA) employs a three-step analysis. 20 C.F.R. § 416.924(a). First, if the child is engaged in substantial gainful activity, his or her claim is denied. *Id.* Second, if the child does not have a medically severe impairment or combination of impairments, then his or her claim is denied. *Id.* Finally, the child's impairments must meet, or be functionally equivalent, to any of the Listings contained in 20 CFR pt. 404, subpt. P, app. 1. *Id.* To find an impairment functionally equivalent to one in the Listings, an ALJ must analyze its severity in six age-appropriate categories: "(i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for yourself; and (vi) health and physical well-being." *Id.* § 416.926a(b)(1). To functionally equal the Listings, the ALJ must find an "extreme" limitation in one category or a "marked" limitation in two categories. An "extreme" limitation occurs when the impairment interferes very seriously with the child's ability to independently initiate, sustain or complete activities. *Id.* § 416.926a(e)(3)(i). A "marked" limitation is one which

4

interferes seriously with the child's ability to independently initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2)(i).

## III. DISCUSSION

J.J. raises four arguments in support of his request for reversal of the ALJ's determination that he is not disabled: (1) the ALJ failed to properly consider his teachers' reports; (2) the ALJ failed to weigh the opinion evidence as required; (3) the ALJ failed to properly assess the credibility of J.J. and Ms. Gantner; and (4) the ALJ's domain findings lacked support in the record. (Dkt. 18). After reviewing the record and the parties' briefs, the Court is persuaded that the reasons provided by the ALJ for finding that J.J. had less than marked limitations in two domains in particular—attending and completing tasks and acquiring and using information—are legally insufficient and not supported by substantial evidence. *See Hopgood ex rel. L.G.*, 578 F.3d at 697 (remanding where the ALJ "made conclusory statements that contradicted the evidence presented and failed to address portions of medical and school records that were favorable to [the child]."). The Court will discuss the ALJ's errors regarding these two domains and will address J.J.'s arguments regarding the teachers' reports and opinion evidence. The Court need not address credibility.

**A. The ALJ's Domain Finding in Attending and Completing Tasks**

The attending and completing tasks domain considers "how well you are able to focus and maintain your attention, and how well you begin, carry through, and finish your activities, including the pace at which you perform activities and the

ease with which you change them." 20 C.F.R. § 416.926a(h). Attention involves regulating levels of alertness and initiating and maintaining concentration; the ability to filter out distractions and focus on an activity or task at a consistent level of performance; focusing long enough to initiate and complete an activity or task, and changing focus once it is completed; and if you lose or change focus in the middle of a task, you are able to return to the task without other people having to remind you frequently to finish it. *Id*. § 416.926a(h)(1)(i).

The ALJ explained her finding that J.J. had a less than marked limitation in attending and completing tasks as follows:

> It is noted that the claimant does well when working at a task by himself. When in groups, he has a hard time staying focused. His attention is best for subjects he is excited about (Ex. 12E/3). I note the claimant's limitations, but I find they are less than marked.

(R. at 29).

This perfunctory explanation fails to provide a logical bridge between the evidence and the ALJ's conclusion. *See Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("We have repeatedly held that an ALJ must provide a logical bridge between the evidence in the record and her conclusion."); *Giles ex rel. Giles v. Astrue,* 483 F.3d 483, 488 (7th Cir. 2007) ("[I]t is unclear what evidence the ALJ relied upon in finding that [the child] was not markedly limited in this domain [of attending and completing tasks]. We require an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies.").

In explaining her finding in this domain, the ALJ relied solely on Jeri Klemenc's May 4, 2015 Teacher's Report (hereafter, "2015 Teacher's Report"). Ms. Klemenc was J.J.'s teacher five days a week for two years in the special education program. (R. at 329). Of the three sentences the ALJ cited from the 2015 Teacher's Report, one was that "in groups, [J.J.] *has a hard time staying focused.*" (*Id*. at 29). The ALJ did not explain how this evidence, favorable to J.J., was overcome by unfavorable evidence. Earlier in her opinion, the ALJ observed that the 2015 Teacher's Report identified "serious" problems in a few areas and no "very serious problems" in any domains. (*Id*. at 26–27). But the ALJ did not discuss how the "serious" problems factored into her analysis. Nor did she discuss how she weighed the findings that J.J. had daily, obvious problems with refocusing to task when necessary, waiting to take turns, and completing work accurately without careless mistakes. (*Id*. at 331). *See Hopgood ex rel. L.G.*, 578 F.3d at 700 (finding ALJ's analysis deficient where he "failed to explain why he did not credit portions of the record that were favorable to LG, including the teachers' reports that found LG had *serious or obvious* problems in this domain.") (emphasis added).

The ALJ relied on the 2015 Teacher's Report, but did not identify or explain the weight she gave that report. Indeed, the ALJ did not identify a weight for *any* opinion of any teacher, speech and language pathologist, doctor, or psychologist. *See Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (internal citations and quotations omitted); *see also* SSR 06-3p, 2006 SSR LEXIS 5

7

("Evaluations from school personnel are considered 'other source' opinions."); 20 CFR § 416.927 (evaluating opinion evidence); *id.* § 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you.").

The only weights the ALJ gave were for the original state agency consultant opinion (no weight) and March 19, 2014 state agency consultant opinion on reconsideration (R. at 72–81) ("Reconsideration Opinion") (great weight). Even then, the ALJ did not give a rationale for the "great weight" placed on the Reconsideration Opinion except to state that "little evidence" had been submitted since reconsideration and the evidence submitted "does not support worsening in condition." (R. at 27). The Reconsideration Opinion itself was sparse on details about why the consultants believed J.J. had less than marked limitation in attending and completing tasks. (*Id.* at 72–81). The explanation consisted of one paragraph which referred only to a 2013 medical examination and the 2013 psychological evaluation by J.B. Goebel, Ph.D ("Goebel Evaluation"). (*Id.* at 76). Missing from the Reconsideration Opinion is any mention of J.J.'s Individualized Education Program ("IEP") reports, the 2013 Teacher's Report, and the speech and language assessments.

There are also problems with the ALJ's statement acknowledging that J.J. had "some attention and focusing problems and difficulty not blurting out answers," but finding "no significant behavioral problems and although [J.J.] is somewhat behind,

8

he is making progress…in special education [and] has not been referred for outpatient therapy or counseling." (R. at 27).

First, the ALJ did not discuss how (and if) she accounted for evidence favorable to J.J. in this domain. In contrast to the ALJ's vague reference to a lack of "significant behavioral problems," the Regulations provide specific examples of limited functioning in attending and completing tasks, including being easily startled, distracted, or overreactive; repeatedly becoming sidetracked from activities or frequently interrupting others; being easily frustrated and giving up on tasks; and requiring extra supervision to stay engaged in an activity. 20 C.F.R. § 416.926a(h)(3). The record contains many references to J.J. being easily distracted, frustrated, and inattentive, having a tendency to interrupt others, and needing supervision. (e.g., R. at 208–19, 295, 299–301, 330, 382). The 2013 teacher's report by special education teacher Bonnie Mattson and speech pathologist Terri Schulte ("2013 Teacher's Report") stated that J.J. "functions best in highly structured setting." (*Id*. at 196). The February 2014 assessment by speech and language pathologist Michele Worden ("Worden Assessment") reported that J.J.'s speech and language delay frequently adversely affected his educational performance and ability to socialize. (*Id*. at 284–87). The March 2014 assessment by speech and language pathologist Melanie Boyd assessment ("Boyd Assessment") observed J.J.'s "spontaneous utterances" and difficulty understanding directions. (*Id*. at 391–95).

Second, the ALJ erred by comparing J.J. to himself and by using his perceived "improvement" as a reason to find him not disabled. The ALJ's focus on J.J.'s

9

"progress" was both legally flawed and factually inaccurate. Defendant makes the same error by arguing that J.J. had "shown improvement" and "made progress on his goals." (Dkt. 20 at 1).

The Regulations require an ALJ to "compare your functioning to *the typical functioning of children your age who do not have impairments.*" 20 C.F.R. § 416.926a(f)(1) (emphasis added). Social Security Ruling 09-2p requires specific attention to the special education a child receives and how that impacts the child's ability to *independently* initiate, sustain, and complete activities. 2009 SSR LEXIS 2 (emphasis added).[3] *See also Taylor ex rel. T.L. v. Colvin*, No. 15 CV 3176, 2016 U.S. Dist. LEXIS 157477, at *56 (N.D. Ill. Nov. 14, 2016) ("Nor do the regulations and Rulings that govern the six functional domains ask if a child has 'improved' without also considering the context within which such improvement occurred."); *A.H. v. Astrue*, No. 09 C 6981, 2011 U.S. Dist. LEXIS 54124, at *35 (N.D. Ill. May 18, 2011) ("Presumably, a child with serious limitations could show a measure of progress and still fall within the marked or extreme functional categories compared to other children her own age."); *Edwards v. Colvin*, No. 12 C 7639, 2013 U.S. Dist. LEXIS 106104, at *33–34 (N.D. Ill. July 30, 2013) ("The fact that a child's functioning has improved does not explain why the child has reached a specific

---

[3] "This information about supports children receive can be critical to determining the extent to which their impairments compromise their ability to independently initiate, sustain, and complete activities. In general, if a child needs a person, a structured or supportive setting, medication, treatment, or a device to improve or enable functioning, the child will not be as independent as same-aged peers who do not have impairments. We will generally find that such a child has a limitation, even if the child is functioning well with the help or support. The more help or support of any kind that a child receives beyond what would be expected for children the same age without impairments, the less independently the child functions, and the more severe we will find the limitation to be." SSR09-2p, 2009 SSR LEXIS 2, *17.

functional level…The ALJ's task was not to point to generalized improvement, but to explain with some degree of clarity why L.T.'s limitation was - in fact - less than marked when compared to non-impaired children his age.").

The ALJ did not explain how J.J.'s limitation in attending and completing tasks was less than marked compared to non-impaired children his age or in light of all the supports he received in special education. The ALJ failed to connect the perceived "progress" to an analysis of J.J.'s functionality in this domain. *See Edwards*, 2013 U.S. Dist. LEXIS 106104, at *34 ("What [the ALJ] could not do…was to reach his conclusion without accounting for the structure, supports, and behaviors that were relevant to comparing L.T. to other children."). In addition, the ALJ's heavy reliance on the 2015 Teacher's Report as evidence of "improvement" shows that the ALJ did not consider the full longitudinal picture. *See Taylor ex rel. T.L.*, 2016 U.S. Dist. LEXIS 157477, at *35 (citing SSR 09-2p, 2009 SSR LEXIS 2) ("An ALJ is obligated to consider a child's limitations on a longitudinal basis and not to decide the issue based on an isolated time frame within the disability period.").

Moreover, the ALJ did not weigh the evidence contradicting her conclusion that J.J. had "improved." Record evidence showed that J.J. continued to require a highly structured environment and significant support, cues, and reminders in order to remain focused and complete tasks. J.J.'s most recent IEP in the record ("2014 IEP") stated he continued to need "supports to maintain focus to task." (R. at 347). The 2015 Teacher's Report stated that he has a hard time staying focused in groups.

(*Id.* at 331). Defendant nevertheless contends, without citation to authority, that the ALJ's conclusion regarding J.J.'s limitation in attending and completing tasks was a "supportable conclusion given the effectiveness of minor interventions." (Dkt. 20 at 7). But the more the record reflected that J.J. required interventions and supports, and indeed it did, the more the record *contradicted* the ALJ's finding of a less than marked limitation in this domain.

Third, the ALJ referenced J.J.'s lack of referral for outpatient therapy or counseling. While the regulations direct ALJs to consider treatment history when assessing the severity of a claimant's symptoms, 20 C.F.R. § 404.1529(c)(3)(v), an ALJ must not draw negative inferences about a failure to obtain treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Roddy v. Astrue*, 705 F. 3d 631, 638 (7th Cir. 2013) (internal quotation and citations omitted); *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014); *see* SSR 16-3p, *8–9. In this case, the ALJ recognized that J.J. was in special education classes for the majority of the day, where he received speech and language therapy every day as well as social work services. (R. at 23).

**B. The ALJ's Domain Finding in Acquiring and Using Information**

The ALJ explained her finding of a less than marked limitation in acquiring and using information as follows:

> Speech language testing in April 2014, revealed 103 standard score in listening comprehension and 82 standard score in oral expression. His total overall standard score was 91 with 100% intelligible speech (Ex.

> 4F). The claimant's current teacher, Jeri Klemenc reported the claimant has a language disability and is easily distracted and impulsive. He loves to learn and try his best. He often interrupts discussions and blurts out answers due to lack of impulse control. She stated he has great difficulty regulating his talking but has a good memory for previously learned information (Ex. 12E/2). The evidence supports a less than marked limitation in acquiring and using information.

(R. at 28).

The acquiring and using information domain considers "how well you acquire or learn information, and how well you use the information you have learned." 20 C.F.R. § 416.926a(g). This includes being able to "use language to think about the world and to understand others and express yourself; e.g., to follow directions, ask for information, or explain something." *Id.* § 416.926a(g)(1)(ii). Expectations for school aged children include being able to produce oral and written projects, do group work, and enter into class discussions, use increasingly complex language to share information and ideas with individuals or groups, by asking questions and expressing ideas, and by understanding and responding to the opinions of others. *Id.* § 416.926a(g)(1)(iv). Examples of limited functioning in acquiring and using information include not demonstrating understanding of words about space, size, or time; difficulty solving mathematics questions or computing arithmetic answers; difficulty recalling important things learned in school; talking only in short, simple sentences and having difficulty explaining what you mean. *Id.* § 416.926a(g)(1).

To conclude that J.J. had less than marked limitation in acquiring and using information, the ALJ relied on the Boyd Assessment and the 2015 Teacher's Report. The 2015 Teacher's Report stated that J.J. was in the 5th grade but functioning at a

13

3–4th grade level in reading, math and written language. (R. at 329). In the assessment of Acquiring and Using Information, Ms. Klemenc marked that J.J. has a "serious problem" in providing organized oral explanations and adequate descriptions, and an "obvious problem" in six other areas including comprehending oral instructions, expressing ideas in written form, and applying problem-solving skills in class discussions. (*Id.* at 330). The ALJ accurately described Ms. Klemenc's description in this domain as reporting that J.J. has a language disability; is easily distracted and impulsive; loves to learn and try his best; often interrupts discussions and blurts out answers due to lack of impulse control; has great difficulty regulating his talking; and has a good memory for previously learned information. (*Id.* at 28, 330). Given that most of this description is *favorable* to J.J., and that Ms. Klemec found a serious problem in one area and obvious problems in six areas, it is unclear how the ALJ nevertheless reached the conclusion that he had a less than marked limitation in this domain.

In addition, the ALJ cherry-picked findings from the Boyd Assessment (R. at 391–94), and overlooked Boyd's conclusion that J.J. was 10 years old, but functioned as a 7 year old in terms of his expressive language. The ALJ also ignored Boyd's observations that J.J. had difficulty requesting and providing detailed information, making requests for clarification, and providing arguments. An ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

The ALJ also did not mention the Worden Assessment at all. Ms. Worden noted J.J.'s limitations in social communication, receptive language, and expressive language, and concluded that J.J.'s rate of progress was "fair" and his development "atypical." (*Id.* at 284–88). The ALJ failed to address other evidence as well. For instance, a 2012 assessment concluded that J.J.'s listening comprehension and oral expression were "well below average", and in 2013, J.J.'s principal stated that he "needed extensive support." (R. at 293–94, 382). Without explaining what weight he gave the Goebel Evaluation (R. at 386–88), the ALJ cited portions of the evaluation but did not discuss findings such as that J.J. "was only a reliable informant with the aunt's help."[4]

Regarding J.J.'s IEPs, the ALJ mentioned them but failed to explain how unfavorable evidence overshadowed the favorable evidence in the IEPs. The IEPs showed that J.J. spent most of the day in special education environment. (R. at 306, 349). J.J.'s 2014 IEP stated that his math scores in computation and concepts and applications were below average and that he "continues to have deficits with word meaning and use." While "typically developing 5th grade students speak in complete sentences, and have academic vocabulary at a 5th grade level," J.J. "continues to need support with verbal expression, with visual cues or models." (*Id.* at 344–45). While his social/pragmatic skills continued to improve, "he does not always understand the emotional state related to social situations. He tends to speak loudly, make comments that are not relevant to the situation he is in and laugh.

---

[4] The ALJ also stated Dr. Goebel did not make any diagnosis (R. at 24), but he did in fact diagnose ADHD. (*Id.* at 388).

15

When he relates experiences he has difficulty giving information accurately, provides too many details and never ends." (*Id.* at 346). He also "continues to need supports to maintain focus to task, interpret social expectations and overall social adaptive functioning. A typical peer of his age is able to function successfully in his environment without the need for supports." (*Id.* at 347). Numerous modifications and accommodations were made for J.J. including in motivation/reinforcement, oral presentation, pacing and timing, presentation, self-management, and test adaptations. (*Id.* at 348). Supplementary aids and services for J.J. included providing enough time for him to process information during instruction, monitoring for understanding, prompts at times, in testing, presenting directions in simple steps and group common problems together, and use of visuals and manipulatives. (*Id.* at 351).

**C. Summary**

In sum, substantial evidence does not support the ALJ's finding that J.J. had less than marked restrictions in the domains of attending and completing tasks and acquiring and using information. The ALJ's failure to address evidence of difficulties in these two domains leaves the Court without means to meaningfully review the ALJ's decision. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003). When reviewing a denial of disability benefits, a court may "affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). On remand, the ALJ shall reevaluate

16

J.J.'s limitations in accordance with this opinion, considering all of the evidence in the record, and shall explain the basis for her findings in accordance with applicable regulations and rulings.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [18] is **GRANTED**. Defendant's Motion for Summary Judgment [20] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

Dated: November 27, 2017  E N T E R:

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge